UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:22-cr-708-RWS |
| | ) |
| MARIO COOKS, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S SENTENCING MEMORANDUM**

$15.00 an hour. $16.00 an hour. $18.50 an hour. $21.00 an hour. After Mario Cooks' release on pretrial supervision over a year ago, he has worked hard, climbing up to higher pay, and more rewarding, employment. While Mr. Cooks earned legitimate income prior to the indictment doing odd jobs, such as reselling items online, having a boss with fixed rules and more established hours was relatively new for him. And he has thrived with having a routine, a consistent paycheck, as well as the pride that comes with finding not just a job, but a career.

Specifically, Mr. Cooks started out in February 2023 working as a dishwasher at Chipotle earning $15.00 an hour. Presentence Investigation Report ("PSR") ¶ 79. Mr. Cooks quickly left this job in March 2023 to earn a dollar more working in a warehouse for Nova Group. *Id*. ¶¶ 79, 78. After a couple of months, Mr. Cooks found a new job at Amazon earning $18.50 as a delivery driver. *Id*. And starting September 2023, Mr. Cooks earned $21.00 an hour, his highest paying job yet, as a tow truck operator for Roadside Recovery, a contractor with AAA. *Id*. On top of the higher pay, Mr. Cooks found a career which he enjoyed and had meaning—helping people after their vehicles broke down.

In January, though, Mr. Cooks left Roadside Recovery after he damaged a car while loading it. Mr. Cooks then found another job as a tow truck driver with Advantage Towing. The company hired him to work pending a background check. After working for five days, he was let go from this job because of the instant case. Mr. Cooks quickly found new employment. As of February 8, 2024, Mr. Cooks has started a new job with Axel Transportation Solution Services where he drives a van taking people to various appointments, similar to Call-a-Ride, making $19.50 an hour. This work is rewarding too because Mr. Cooks helps transport adults with disabilities or homeless children, but, because he is making less pay, Mr. Cooks hopes he can get back to tow truck driving at some point in the future.

## Mr. Cooks is a Devoted Parent to his Son and his Girlfriend's Children

Mr. Cooks works hard to support himself, as well as his 15-year-old son ▮▮, who he raises as the full-time custodial parent. After Mr. Cooks and ▮▮ mother, Tangunikia Ward, separated in 2010, his son initially lived with his mother while Mr. Cooks struggled to make ends meet and pay child support. But he still was an involved father. *See* PSR ¶ 63 (Ms. Ward describing Mr. Cooks as a "'good father.'"). Even if he struggled financially, Mr. Cooks has "been there for [their] son every step of the way." Exhibit A, attached (email from Tangunikia Ward).

As discussed in Mr. Cooks' PSR Objections, in 2019, St. Louis County charged him with a misdemeanor for failing to pay child support in 2018.[1] Dkt. No. 45; PSR ¶ 52. While the case was pending, ▮▮ moved in 2021 from his mother's home to live with Mr. Cooks full-time because he started having trouble with negative

---

[1] On January 14, 2022, Mr. Cooks received a suspended imposition of sentence and one year of probation, which he completed on January 14, 2023. PSR ¶ 52. Because of the child support issue, Mr. Cooks also lost his driver's license for a period time, but he has since gotten it back.

2

influences. *Id*. ¶ 63. With just the two of them in Mr. Cooks' home, his goal was to help get his son inline with a stricter parenting style. As Ms. Ward explains, Mr. Cooks "keeps [▓▓▓▓] together[,] . . . keep[s] him out of trouble and he guid[es] him on the right path to success[.]" Ex. A. Living together full-time, Mr. Cooks has also made sure his son has proper medical treatment for his ▓▓▓▓, which includes resuming medication. Exhibit B, attached (email from Melanie Baptiste) (discussing Mr. Cooks "[t]aking on the responsibility of his son's ▓▓▓▓").

And ▓▓▓▓ is doing better. In May 2023, ▓▓▓▓, graduated from middle school, a proud moment that Mr. Cooks recorded and complied into a video recognizing his son's hard work, as the below screen shots from the video show:



While Mr. Cooks is in a new relationship with Melanie Jean Baptiste since 2018, she lives separately with her two children from a prior relationship. Despite the different households, Mr. Cooks treats Ms. Baptiste's daughters as if they were his own. Ex. B. He counsels her daughters on how to handle teenage stressors like bullying at school and he helps Ms. Baptiste as a "back up" parent. *Id*. For example, Mr. Cooks "go[es] above and beyond" for her children, along with his own son, such as making sure they have a nice Christmas to surprising them with family activities

3

outside the home. *Id.* (describing trips to Six Flags and haunted houses). In their community, as Ms. Baptiste explains, "many fathers have dropped the ball and walked out [of] their kids['] l[ives]." *Id.* But Mr. Cooks has "vowed to never abandon his son and to always be there for him." *Id.*

### Raised without a Father, Mr. Cooks Vowed to be Different

Fatherhood was not modeled for Mr. Cooks. PSR ¶ 62 (noting "no real male figures during his childhood"); Ex. B (stressing Mr. Cooks' father abandoned him). The only thing Mr. Cooks really knew about his own father was his first name was "Bill." PSR ¶ 62. He had no relationship with him whatsoever before he passed away five years ago. *Id.*

Mr. Cooks, however, had a close relationship with his mother, who raised him and his five siblings as a single parent. Mr. Cooks though had to help his mother "a lot of th[e] time" while in school because she was older, disabled, had mental health issues and was completely deaf in one ear and partially deaf in her second ear. Exhibit C, attached (letter from Octavia Smith). She did what she could to provide a stable and happy childhood within their home, while the family lived in neighborhoods with gun violence and drug dealing. In 2020, Mr. Cooks was devastated when he lost his mother, the only parent he knew, to Covid. *Id.* Losing his mother, and his brother's hospitalization with a Covid a year later, caused Mr. Cooks to sink, but he regained his footing so he could remain a stable parent for ▆▆ ▆.

\* \* \*

Even though Mr. Cooks was raised around crime in the neighborhoods he grew in—this is his ***first*** conviction at 35 years old, other than traffic offenses. On top of the 2022 SIS in which he discharged for non-support related to a 2018 charge, he has

4

another misdemeanor SIS for stealing from 2018.[2] PSR ¶¶ 51, 52. Those two cases, therefore, did not result in any convictions.[3] Not only does Mr. Cooks now have a criminal conviction that will stay on his record—it is a felony conviction.

As this Court is aware, felony convictions come with a host of collateral consequences, such as, regrettably, job limitations. Mr. Cooks experienced a taste of these limitations when he lost his job with Advantage Towing because of the pending case. But, Mr. Cooks quickly found new employment. Custody will likely not only cause him to lose this job too—but he would also lose his apartment even with a brief custodial sentence. While his son can return to his mother's, the stability his son has achieved will be unmoored with switching schools, losing a positive male influence—which Mr. Cooks lacked growing up, and the overall homelife he has known for the past several years.

### **Mr. Cooks has Excelled with Counseling through Pretrial Services**

On top of his employment advances, Mr. Cooks has made other vast improvements for the past year he has been on pretrial services. Mr. Cooks has worked hard to refrain from using marijuana. While he had positive tests for marijuana for the first couple months of his pretrial release, he has not had a positive test since May 2023, and he fully engaged in his counseling. As Mr. Cooks' Risse Counselor, Alfred Abotsi, wrote: Mr. Cooks was "very consistent with his sessions and participated fully, very respectful and always focused on the goals he set for himself." Exhibit D, attached (Report from Alfred Abotsi). Mr. Cooks successfully completed

---

[2] Mr. Cooks had a prior misdemeanor conviction for marijuana possession from a decade ago but that has been expunged.

[3] If the Court overrules Mr. Cooks' over-representation objections, Dkt. No. 45, the Court should nevertheless vary down because Mr. Cooks has shown himself to be a dedicated father who has been shouldering the financial responsibilities for raising his son as the full-time custodial parent for the past couple of years.

Moral Reconation Therapy (MRT) in August 2023 and he successfully completed substance abuse treatment at Risse Counseling in November 2023.  PSR ¶ 70; Ex. D.  Mr. Abotsi regarded Mr. Cooks as a "***model client***[,]" finding it "rare to have such a client who believes in adding value to himself but not thinking that the world is out there to get him."  Ex. D (Mr. Cooks "talked a lot about his family, especially his son, his girlfriend, and his step children.") (emphasis added).

Mr. Cooks has also paid down most of his traffic tickets while on Pretrial Release.  Exhibit E, attached (December 2023 and January 2024 receipts of payments) (showing two cases pending as of Jan. 22, 2024).  The government, though, previously argued Mr. Cooks "approaches sentencing with six outstanding warrants for disregarding a court order that he not drive a vehicle," and thus, "failed to abide by the order of United States Magistrate Judge Stephen Welby as of the date of his pleading 13 months later." Dkt. No. 52 at pp. 1-2.[4]  Mr. Cooks, however, did not have any traffic warrants as of that pleading, or now.[5]  Ex. E.  He has been paying on his tickets.  *Id.*

Mr. Cooks has become entrenched in stability—working a productive job, raising his son as the full-custodial parent and caring for his girlfriends' two daughters, getting his driver's license back, while staying clean after successfully completing two different therapy pretrial programs.  The Court should grant him a

---

[4] The undersigned understands that Mr. Cooks lost driving privileges as a result of his child support issues through the DMV, rather than a court order directing him not to drive.

[5] Counsel initially overlooked the PSR's reference that these traffic tickets were in "warrant" status.  Dkt. No. 50 ¶¶ 55-60.  After reading the government's response, counsel informed government counsel and Probation that Mr. Cooks is not in warrant status and provided documentation to show that he is paying down the tickets (and has paid down several tickets).  *See* Ex. E at p. 1.  Probation has confirmed Mr. Cooks is not in warrant status and has informed the parties that the PSR will be amended.

6

non-custodial sentence so he can remain on his positive trajectory.

## Conclusion

As argued above, the Court should sentence Mr. Cooks to probation or time served.

Respectfully submitted,

Date: February 9, 2024

/s/ Rachel Korenblat
Rachel Korenblat
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: 314-241-1255
Fax: 314 241 3177
E-Mail: Rachel_Korenblat@fd.org
Attorney for Defendant

## **CERTIFICATE OF SERVICE**

Assistant Federal Public Defender Rachel Korenblat certifies that she caused Defendant's sentencing memo be filed electronically with the Clerk of the Court, to be served by email upon Assistant United States Attorney, Tracy Berry.

Dated:   February 9, 2024.

/s/ Rachel Korenblat